UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| LUCY WEISS, Individually, and<br>BRIAN CHAPMAN, Individually,<br><br>Plaintiffs,<br><br>-v-<br><br>BLUE WATER DEVELOPMENT CORP.,<br>d/b/a COMFORT INN & SUITES<br>DAYTONA BEACH OCEANFRONT,<br>and CHOICE HOTELS<br>INTERNATIONAL, INC.,<br><br>Defendants. | Civil Action No. 6:26-cv-01416-GAP-LHP |

**DEFENDANT, CHOICE HOTELS INTERNATIONAL, INC.'S, MOTION TO DISMISS COMPLAINT AND INFORPORATED MEMORANDUM OF LAW**

COMES NOW, Defendant, CHOICE HOTELS INTERNATIONAL, INC. (hereinafter "Choice"), by and through undersigned counsel, hereby moves this Honorable Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint and states as follows:

## INTRODUCTION

Plaintiffs seek to hold Choice and Co-Defendant, BLUE WATER DEVELOPMENT CORP. (hereinafter "Blue Water") liable for a service-animal surcharge allegedly imposed during their November 10–11, 2025 stay at the Comfort Inn & Suites Daytona Beach Oceanfront. [DIN 1]. Plaintiffs allege that hotel personnel initially attempted to impose a $250 "service dog fee" and later

charged $100 to Plaintiff Brian Chapman's credit card. [DIN 1].

The Complaint identifies Blue Water as the Hotel's owner, operator, and manager responsible for the Hotel's policies, practices, staff training, and legal compliance. By contrast, it identifies Choice as the franchisor of the Comfort Inn brand. Nevertheless, Plaintiffs allege collectively, and without supporting facts, that both Defendants controlled or influenced the Hotel and seek to impose vicarious liability on Choice for the conduct of Hotel personnel. [DIN 1].

However, as laid out below, the Franchise Agreement (hereinafter "Agreement") between Choice and Non-Party, BLUE DAYTONA ONE LLC (hereinafter "Blue Daytona"), forecloses Plaintiff's theory. As disclosed within Blue Water's Rule 7.1 Disclosure Statement, Blue Daytona is a parent corporation of Blue Water. [DIN 21]. The Agreement grants the franchisee a limited license to use Choice's System and the Comfort Inn brand at 103 South Ocean Avenue, Dayona Beach, FL. *Franch. Agr.* (Attached hereto as Exhibit "A"). The franchisee, not Choice, undertook the contractual duties to operate and maintain the hotel, keep it safe and secure, comply with applicable law, train its employees, and ensure ADA compliance. *See* Exhibit A.

The Agreement also confirms that the franchisee exercises ordinary, day-to-day business control over the hotel, including personnel and employment matters and room pricing. Exhibit A. It expressly provides that the parties are

independent contractors and do not have an agency, joint-employer, partnership, or joint-venture relationship. Exhibit A. Choice does not assume liability for the franchisee's acts or omissions relating to the hotel's construction, renovation, operation, maintenance, or promotion. *See* Exhibit A.

Florida law does not make a franchisor the guarantor of every act of an independently operated franchise. A franchisor may incur vicarious liability only when, by contract, action, or representation, it substantially participates in directing or managing the franchisee's acts beyond routine franchise-support activities. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995). As the Complaint alleges no facts meeting that standard, Choice should be dismissed.

## STATEMENT OF FACTS

1. On June 30, 2026, Plaintiffs filed their Complaint seeking to hold Choice and Blue Water liable for a service-animal surcharge allegedly imposed during their November 10–11, 2025 stay at the Comfort Inn & Suites Daytona Beach Oceanfront. [DIN 1].

2. Effective June 13, 2019, Choice and Blue Daytona entered into the Franchise Agreement concerning the 112-room hotel located at 103 South Ocean Avenue, Daytona Beach, Florida. Exhibit A.

3. On October 7, 2026, Blue Water filed its Rule 7.1 Disclosure Statement indicating Blue Daytona is a parent corporation. [DIN 21].

4. Choice granted the franchisee a non-exclusive, limited, and revocable license to use the Comfort Inn brand and Choice's franchise system to operate the hotel. Choice agreed to provide franchise-related services, including access to its property-management and reservation systems, marketing services, hotel listings, and quality-assurance programs. Exhibit A.

5. Although the Agreement indicates Choice may offer the franchisee consultation, the Agreement expressly states that any guidance, recommendations, or advice were suggestions and that the franchisee retained sole discretion whether to follow them. Exhibit A.

6. The franchisee assumed responsibility for the hotel's daily operation and physical condition. Among other obligations, the franchisee agreed to:

a. Construct, renovate, operate, furnish, maintain, and advertise the hotel;

b. Perform repairs, cleaning, redecoration, repainting, and replacement of obsolete or outdated hotel supplies;

c. Keep the hotel's interior, exterior, parking areas, and food-and-beverage facilities clean, sound, attractive, and in good repair;

d. Operate the hotel safely and securely;

e. Determine and address all safety concerns involving the hotel and surrounding areas;

f. Comply with applicable federal, state, and local laws concerning the hotel and its employees;

g. Train its own employees in hotel operations; and

h. Ensure the hotel's compliance with the ADA.

Exhibit A.

7. The Agreement further states that the franchisee is solely responsible for exercising ordinary, day-to-day business control over the Hotel, including personnel and employment decisions and pricing. Exhibit A.

8. The Agreement provides that the franchisee is an independent contractor and that neither the Agreement nor Choice's brand rules creates an agency, partnership, joint venture, fiduciary, or joint-employer relationship. Exhibit A.

9. The Complaint does not allege that Choice owned or leased the hotel, employed the personnel who interacted with Plaintiffs, directed those personnel, set or collected the disputed charge, received any portion of that charge, or knew of the incident before it occurred. Instead, the Complaint alleges generally that Choice established brand standards and that both Defendants jointly controlled or influenced the hotel's policies and practices. [DIN 1].

## I. <u>LEGAL STANDARD</u>

A federal court deciding issues of Florida substantive law must apply

Florida law. If the Florida Supreme Court has decided the issue, that decision controls. If it has not, the federal court must predict how the Florida Supreme Court would decide it. *McMahan v. Toto*, 311 F.3d 1077 (11 Cir. 2002); *Near v. Enerco Grp., Inc.*, 182 F.4th 341 (4th Cir. 2026).

Florida District Courts of Appeal decisions carry substantial, ordinarily binding weight in that prediction. The Eleventh Circuit has stated that, absent a Florida Supreme Court decision on the issue, it is bound to follow Florida intermediate appellate decisions unless there is a persuasive indication that the Florida Supreme Court would rule differently. *McMahan v. Toto*, 311 F.3d 1077 (11 Cir. 2002). This approach is particularly appropriate in Florida because the Florida Supreme Court has held that District Court of Appeal decisions represent Florida law unless and until the Florida Supreme Court overrules them. *Id.*

Accordingly, this Honorable Court should follow Florida District Court of Appeal decisions directly addressing the relevant state-law issues here. The Court may depart only when persuasive data or a persuasive indication establishes that the Florida Supreme Court would decide the issue differently; a federal court may not disregard an intermediate appellate decision merely because it interprets state law differently. *Near v. Enerco Grp., Inc.*, 182 F.4th 341 (4th Cir. 2026); *Bravo v. United States*, 577 F.3d 1324 (11th Cir. 2009).

In resolving a motion to dismiss, a court considers the allegations within the

complaint and any exhibits properly made part of the pleading. A pleader's conclusions concerning the meaning of an exhibit do not bind the court, and when an exhibit contradicts the pleading's allegations, the exhibit controls. *Polk State Coll. Dist. Bd. of Trs. v. Fisher*, 418 So. 3d 678, 682 (Fla. 2024). Likewise, a document attached to a complaint is part of the pleading, and its plain language controls over conflicting allegations. *Goodall v. Whispering Woods Ctr*., L.L.C., 990 So. 2d 695, 699 (Fla. 4th DCA 2008).

A franchisor may be held vicariously liable under an agency theory when it directly controls, or possesses the right to control, the franchisee's day-to-day operations. *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212, 221 (Fla. 5th DCA 2018). The relevant inquiry concerns the nature and extent of the control established by the agreement or the parties' actual practices; the control necessary to protect brand names, goods, and services does not itself establish an employment or agency relationship. *Font v. Stanley Steemer Int'l, Inc*., 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003).

## II. **PLAINTIFFS' COMPLAINT DOES NOT ALLEGE FACTS SHOWING THAT CHOICE CONTROLLED THE HOTEL'S OPERATIONS OR THE CONDUCT AT ISSUE**

Florida law requires more than a franchise relationship, common branding, or routine franchise support to impose liability on a franchisor. The Florida Supreme Court has explained that the use of franchise logos and advertising does

not necessarily show actual or apparent control over the franchisee's business or employment decisions, and routine contractual support services do not establish that control. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995). A franchisor may become responsible for a franchisee's acts only if the franchisor substantially participates, by contract, conduct, or representation, in directing or managing those acts beyond ordinary franchise-support activities. *Id*. The right of control, not the parties' labels or the mere exercise of brand oversight, determines whether an agency relationship exists. *McDonald's Rests. of Fla., Inc. v. Doe*, 87 So. 3d 791, 795 (Fla. 2d DCA 2012).

The Complaint here does not satisfy the standard established. It alleges generally that Choice established brand standards and training requirements and that Defendants collectively controlled or influenced the Hotel's policies. [DIN 1]. It does not allege that Choice:

a. Owned, leased, or possessed the hotel;

b. Employed, hired, fired, paid, or supervised the hotel personnel who interacted with Plaintiffs;

c. Established or enforced the alleged service-animal fee;

d. Directed anyone to charge Plaintiffs' credit card;

e. Participated in Plaintiffs' check-in or stay;

f. Controlled the hotel's daily maintenance or administration; or

g. Made any representation to Plaintiffs that the hotel or its employees acted as Choice's agents.

The Agreement instead assigns daily hotel operations, maintenance, safety, legal compliance, ADA compliance, and employee training to the franchisee. Exhibit A. It expressly provides that the franchisee retains ordinary day-to-day business control and is an independent contractor rather than Choice's agent. Exhibit A.

Importantly, Florida courts have dismissed materially similar claims. In *Madison v. Hollywood Subs, Inc.*, the Fourth District affirmed dismissal of a franchisor where the agreement reserved daily operations to the franchisee and the franchisor's control was limited to ensuring uniformity in products and services. *Madison v. Hollywood Subs, Inc*., 997 So. 2d 1270, 1270 (Fla. 4th DCA 2009). In *Ferrer v. Jewelry Repair Enterprises*, the court likewise concluded that a typical franchise agreement requiring standardized products and services and providing ongoing support did not give the franchisor control over the franchisee's daily operations, management, or employees. *Ferrer v. Jewelry Repair Enters*., 310 So. 3d 428, 429 (Fla. 4th DCA 2021). The use of a uniform name and logo, coupled with ongoing support intended to preserve brand standards, did not establish actual or apparent control. *Ferrer v. Jewelry Repair Enters.*, 310 So. 3d 428, 430 (Fla. 4th DCA 2021).

The same reasoning applies here. Choice's quality-assurance rights, brand requirements, reservation services, marketing support, and optional consultation preserve system uniformity; they do not transfer daily operation of the hotel to Choice. *See* Exhibit A. The Complaint's collective allegation of "control" does not identify any substantial participation by Choice in the acts that allegedly injured Plaintiffs. [DIN 1].

## III. THE AGREEMENT NEGATES ACTUAL AGENCY AND ANY RIGHT BY CHOICE TO CONTROL THE ALLEGED CONDUCT

Actual agency requires control by the purported principal over the agent's actions. *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212, 221 (Fla. 5th DCA 2018). In the franchise context, courts examine whether the franchisor controlled or possessed the right to control daily operations, not merely whether it imposed standards protecting the licensed brand. *Font v. Stanley Steemer Int'l, Inc.*, 849 So. 2d 1214, 1216 (Fla. Fla. 5th DCA 2003).

Here, the Agreement allocates the relevant responsibilities to the franchisee. The franchisee must operate and maintain the hotel, keep it safe and in good repair, comply with applicable laws, train its employees, and ensure ADA compliance. Exhibit A. Further, the franchisee retains sole responsibility for ordinary day-to-day business control, personnel matters, employment decisions, and pricing. Exhibit A.

Choice's contractual rights are qualitatively different. Choice licenses

intellectual property, provides reservation and marketing services, administers quality-assurance reviews, and may offer nonbinding consultation. *See* Exhibit A. The franchisee decides in its sole discretion whether to follow Choice's consultation or advice. These provisions establish brand oversight, not Choice's right to administer daily guest interactions or impose individual charges.

In *Mobil Oil Corp. v. Bransford*, allegations based on branded products, trademarks, and routine franchise support were legally insufficient where the agreement denied the franchisor a right to control the franchisee's business management. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995). In *Madison*, contractual controls designed only to ensure uniformity did not create agency because the franchisee retained sole control of day-to-day operations. *Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1270 (Fla. 4th DCA 2009). The Franchise Agreement here compels the same result.

## IV. <u>PLAINTIFFS' COMPLAINT DOES NOT PLEAD APPARENT AGENCY</u>

Apparent agency requires a representation by the purported principal, reliance by the third party, and a detrimental change of position based on that representation. *Orlando Exec. Park v. Robbins,* 433 So. 2d 491, 494 (Fla. 1983). The representation must originate with the purported principal; apparent authority cannot arise solely from appearances created by the purported agent. *Lensa Corp. v. Poinciana Gardens Ass'n*, 765 So. 2d 296, 298 (Fla. 4th DCA 2000).

The Complaint alleges no representation by Choice that Blue Water Development Corp., Blue Daytona One, LLC, or any hotel employee was authorized to act as Choice's agent in setting service-animal policies or assessing guest charges. *See* [DIN 1]. Nor does it allege that either Plaintiff relied on a representation by Choice and changed position to his or her detriment because of it. *Id.*

The Hotel's use of the Comfort Inn name cannot fill that gap. The Florida Supreme Court has rejected the premise that prominent use of franchise symbols or products, without more, communicates that the franchisor exercises substantial control over the franchisee. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995). As Plaintiffs allege neither a qualifying representation nor reliance, apparent agency also provides no basis for liability against Choice.

## V. PLAINTIFFS' COMPLAINT DOES NOT ATTRIBUTE THE CHALLENGED CONDUCT TO CHOICE

Plaintiffs allege that the hotel attempted to assess a service-animal fee and ultimately charged $100 to Plaintiff Chapman's credit card. [DIN 1]. But the Complaint does not identify any Choice employee, communication, policy, transaction, or decision connected to that alleged charge. Instead, it alleges that Blue operated and managed the hotel and bore responsibility for its policies, staff training, and legal compliance. [DIN 1].

A FDUTPA damages claim requires a deceptive act or unfair practice,

causation, and actual damages. *Bechor v. Simcenter, Inc.*, 394 So. 3d 666, 669 (Fla. 3d DCA 2024). The Complaint identifies no deceptive or unfair act committed by Choice and no damages caused by conduct attributable to Choice. [DIN 1].

Moreover, Plaintiffs' claim for breach of contract likewise does not identify a contract between Plaintiffs and Choice, nor allege facts showing that Plaintiffs were intended beneficiaries of the Franchise Agreement. *See* [DIN 1]. A nonparty may not sue for breach merely because the nonparty received an incidental or consequential benefit from a contract; the contracting parties must have intended to benefit that third party. *Dingle v. Dellinger*, 134 So. 3d 484, 488 (Fla. 5th DCA 2014). The Franchise Agreement grants a limited brand and system license to the franchisee and allocates duties between the contracting parties. It does not identify Plaintiffs or state that hotel guests may enforce its provisions. *See* Exhibit A.

Finally, the Complaint does not allege that Choice received or retained the disputed $100 charge. [DIN 1]. The alleged transaction involved a charge to Plaintiff Chapman's credit card during the hotel stay, while the Agreement places daily hotel operations and pricing under the franchisee's control. *See* Exhibit A and [DIN 1]. Merely grouping Choice with the hotel operator does not supply the missing allegation that Choice participated in or received a benefit from the transaction.

## VI. CONCLUSION

Plaintiffs' Complaint alleges a dispute arising from conduct at an independently operated hotel but does not plead facts showing that Choice owned, possessed, operated, maintained, or administered the premises; controlled the hotel's daily operations or employees; imposed or received the alleged charge; or created an actual or apparent agency relationship concerning the conduct at issue. Accordingly, Choice Hotels International, Inc. respectfully requests that this Honorable Court dismiss all claims against Choice Hotels International, Inc. an grant any such further relief as the Court deems appropriate.

Respectfully Submitted,

***/s/ Kirstie L. Hayduk***

Kirstie L Hayduk, Esq [FBN: 168637]
Kyle Lockwood, Esq. [FBN: 1048766]
khayduk@chartwelllaw.com,
klockwood@chartwelllaw.com,
esmith@chartwelllaw.com

CHARTWELL LAW
100 SE 2nd Street, Suite 2150
Miami, FL 33131
Tel: (305) 372-9044
Fax: (305) 372-5044
*Counsel for Defendant,*
*Choice Hotels International, Inc.*

UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| LUCY WEISS, Individually, and<br>BRIAN CHAPMAN, Individually,<br><br>Plaintiffs,<br><br>-v-<br><br>BLUE WATER DEVELOPMENT CORP.,<br>d/b/a COMFORT INN & SUITES<br>DAYTONA BEACH OCEANFRONT,<br>and CHOICE HOTELS<br>INTERNATIONAL, INC.,<br><br>Defendants. | Civil Action No. 6:26-cv-01416-GAP-LHP |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 21, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and served the forgoing by email to:

## SERVICE LIST

*Attorney for Plaintiff*
**LLG National Law Group**
Robert Mactavish, Esq.
Florida Bar No. 0596388
Pheonix Corporate Tower
3003 N. Central Avenue, Suite 685
Pheonix, AZ 85012
P: (575) 517-6542
robert.mactavish@llgnational.com

By: ***/s/ Kirstie L. Hayduk***
Kirstie, L. Hayduk, Esq.