UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUCY WEISS, INDIVIDUALLY; AND BRIAN CHAPMAN, INDIVIDUALLY;

Plaintiffs,

v. Case No.: 6:26-cv-01416-GAP-LHP

BLUE WATER DEVELOPMENT CORP., CHOICE HOTELS INTERNATIONAL, INC.,

Defendants,
______________________________/

# ORDER

This matter came before the Court without oral argument on Choice's Motion to Dismiss. Doc. 29. The Court has also considered Plaintiffs' Response in Opposition. Doc. 33.

## I. Background

On June 30, 2026, Plaintiffs Lucy Weiss ("Weiss") and Brian Chapman ("Chapman") (collectively, "Plaintiffs") filed suit alleging that Defendants Blue Water Development Corp. ("Blue Water") and Choice Hotels International, Inc. ("Choice") (collectively, "Defendants") violated the Americans with Disabilities Act ("ADA") by demanding, and ultimately charging, a service dog fee appurtenant to their stay at the Comfort Inn & Suites Daytona Beach Oceanfront (the "Hotel"). Doc.

1, ¶¶ 1-4. The Complaint also alleges state breach of contract and unjust enrichment claims, along with violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). *See id.*, ¶¶ 41-59.

On the night of November 10, 2025, Plaintiffs checked in to the Hotel and paid with Chapman's credit card. *Id.*, ¶ 16. Weiss travels with her "trained service dog" to help her "recognize behavioral, visual, and olfactory cues associated with her medical conditions and to intervene to ensure her safety."[1] *Id.*, ¶ 17. Plaintiffs allege that the Hotel never disclosed any pet fees or other charges related to the presence of a service animal at check-in.[2] *Id.*, ¶ 19.

However, after they had settled into their assigned room at the Hotel, Plaintiffs were contacted by staff who "attempted to impose a $250 'service dog fee.' " *Id.*, ¶ 20. After they objected and explained that trained service animals like Weiss's are protected under federal law, the Hotel persisted in imposing a $100 charge on Chapman's credit card. *Id.*, ¶ 21. Plaintiffs allege that the Hotel's insistence on collecting the service animal fee caused Weiss humiliation, distress, and the fear of being denied lodging because of her disability and Chapman

---

[1] The Complaint alleges that Weiss's "licensed medical providers issued written documentation confirming her disabilities and the medical necessity of her service animal" and that these documents "were valid, current, and available upon request." *Id.*, ¶ 18.

[2] *See* 28 C.F.R. § 36.302(c)(8) ("A public accommodation shall not ask or require an individual with a disability to pay a surcharge [to permit the use of a service animal], even if people accompanied by pets are required to pay fees, or to comply with other requirements generally not applicable to people without pets.").

suffered financial loss. *Id.*, ¶ 24.

On October 21, 2026, Choice filed the instant Motion to Dismiss, relying on the attached Franchise Agreement (the "Agreement") between itself and Blue Daytona One, LLC (the parent corporation of Defendant Blue Water) for the proposition that, as the franchisor, it is not liable for Plaintiffs' claims. *See* Doc. 29 at 2; Doc. 29-1. Plaintiffs Responded in Opposition on November 3rd, leaving the matter ripe for adjudication. *See* Doc. 33.

**II. Legal Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g., Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

**III. Analysis**

In Florida, "a franchisor may be held vicariously liable under an agency theory for the tortious acts of a franchisee, or a franchisee's employee, when the franchisor has direct control of, or the right to control, the day-to-day operations of the franchisee." *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212, 221-22 (Fla. Dist. Ct. App. 2018) (citing *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120 (Fla. 1995)). An actual agency relationship requires "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent[.]" *Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla. 1990).

Applying the agency control test can be challenging in the franchise context "because franchises have independent aspects to them, but they must also retain some control over the use of their names, goods and services." *Font v. Stanley Steemer Int'l, Inc.*, 849 So.2d 1214, 1216 (Fla. 5th DCA 2003). "Whether the franchisor's control is sufficient to establish an agency relationship depends in each case upon the nature and extent of such control as defined in the agreement or by the actual practice of the parties." *Domino's Pizza, LLC*, 248 So.3d at 222 (internal quotations and citations omitted).

Choice argues in its Motion that the Agreement forecloses its liability because it expressly disclaims any agency relationship between the parties and instead shows that Blue Water is solely responsible for operating and maintaining the hotel, training its employees, and compliance with the ADA. *See* Doc. 29 at 1-2. In Response, Plaintiffs point to the Complaint's allegations that both Choice and Blue Water "jointly controlled, operated, managed, supervised, or otherwise influenced the policies, practices, and conduct at the subject hotel, including those relating to service-animal accommodations, guest charges, and ADA compliance." *See* Doc. 33 at 1-2; Doc. 1, ¶ 12. The Complaint further alleges that Choice establishes the Hotel's "operational standards, policies, and training requirements…including those governing ADA compliance and service-animal accommodations." Doc. 1, ¶ 11.

First, like many of the precedential cases cited by the parties, the Agreement

here indeed proclaims that Blue Water is an independent contractor who is "solely responsible for exercising ordinary, day-to-day business control over the Hotel, including all personnel and employment related matters and decisions and pricing of rooms and other services at the hotel, regardless of any advise or consultation received from us." Doc. 29-1, ¶ 19(c). It further disclaims that nothing in the Agreements "makes, or is intended to make, either party an agent…of the other[.]" *Id.*

However, Florida appellate courts have "observed [that] it is not uncommon for parties to include conclusory statements in documents with regard to the independence of the relationship of the parties. This may occur even when other contractual provisions and the totality of the circumstances reflect otherwise. **The facts peculiar to each case must govern the ultimate disposition.**" *Font v. Stanley Steemer Intern., Inc.*, 849 So.2d 1214, 1219 (Fla. Dist. Ct. App. 2003) (emphasis added).

The Agreement, by itself, is insufficient to establish that Choice has no "direct control of, or the right to control, the day-to-day operations of the franchisee." *Domino's Pizza, LLC*, 248 So. 3d at 221-22. On one hand, the Agreement clearly obligates Blue Water to comply with all applicable provisions of the ADA—going so far as to restrict Blue Water from opening or utilizing Choice's brand or services until it has provided a satisfactory certification that the property is in compliance. Doc. 29-1, ¶ 6(m). And Blue Water is also "solely responsible for training [its]

employees in the operation of the Hotel[.]" *Id.*, ¶ 6(e).

Nevertheless, the Agreement requires Blue Water to "[c]omply with [Choice's] training requirements by ensuring that [it] and the Hotel's general manager(s) attend (at the times required by [Choice]) our then-current training programs" at Blue Water's expense. *Id.* It also requires Blue Water to "[u]se the Property Management System…to **operate and manage** the Hotel in connection with **all** guest transactions[.]" *Id.*, ¶ 6(g) (emphasis added). Moreover, Choice retains the right "to enter the Hotel at any reasonable time to evaluate your compliance with this Agreement [*i.e.* which necessarily includes compliance with ¶ 6(m)'s ADA provision], the Rules and Regulations, and any quality assurance program we administer either directly or through an authorized third party." *Id.*, ¶ 6(h) (and also requiring Blue Water to "take all steps necessary to correct any deficiencies…within the time periods that we reasonably specify").

These provisions clearly retain contractual rights for Choice to direct and control substantial operational aspects of the Hotel, going beyond "some control over the use of their names, goods and services." *See supra*; *Font*, 849 So.2d at 1216. As Plaintiffs argued, the Agreement does not "eliminate the separate question whether Choice substantially participated in directing or managing the hotel's relevant operational practices"—*i.e.* the actual service animal policies, practices, and oversight at issue here, and whether Choice's management training covered

these policies. *See* Doc. 33 at 7. Consequently, whether Choice has an agency relationship with Blue Water is a factual question which is ill-suited for resolution at this early stage of the case. *See Domino's Pizza, LLC*, 248 So.3d at 221-222; *see Jackson*, 21 F.3d at 1534.

Choice also suggests in its final sentences that it cannot be liable for the Complaint's state law counts. *See* Doc. 29 at 12-13. But its half-hearted missives are unavailing.

The Complaint plainly alleges that Choice contributed to the establishment and operation of an unfair and misleading practice by demanding an unlawful and unposted service dog fee, causing Plaintiffs damage. *See* Doc. 1, ¶¶ 24-26, 41-45. And Choice—who the Complaint plainly alleges "jointly controlled, operated, managed, supervised or otherwise influenced" the Hotel's policies—is alleged to have breached Plaintiffs' *lodging agreement*, not Defendants' (franchise) Agreement. *See* Doc. 33 at 15-16. Indeed, the (franchise) Agreement plainly requires Blue Water to utilize Choice's systems "to operate and manage the Hotel and in connection with all guest transactions" and to "use our Reservation System to accept, hold, honor and track all reservations[,]" providing even further support for the Complaint's allegations. Doc. 29-1, ¶ 6(g). Choice's truncated arguments fail to demonstrate that

the Complaint does not adequately state its Florida claims.[3] *See* Doc. 29 at 12-13.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant Choice Hotels International, Inc.'s Motion to Dismiss (Doc. 29) is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 9, 2026.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[3] Though Choice's contention that Plaintiffs have not stated an unjust enrichment claim may yet hold water, as presented to the Court it contains no legal citations and ignores the obvious allegations of the Complaint. *See* Doc. 1, ¶ 55. The allegations as pled are well-supported enough "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 554–55.